## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **Kelly Neal** | : | |
| **615 E. Girard Avenue** | : | |
| **Philadelphia, PA 19125** | : | |
| | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | **No.** |
| | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **City of Philadelphia** | : | |
| **Philadelphia Police Department** | : | |
| **1515 Arch Street** | : | |
| **14ᵗʰ Floor** | : | |
| **Philadelphia, PA 19102,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **Jose Dones** | : | |
| **615 E. Girard Avenue** | : | |
| **Philadelphia, PA 19125,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

## COMPLAINT
### Jurisdiction and Venue

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 2201, 2202, 1331(a), 1343 and 42 U.S.C. § 2000e-5(f). The described remedies are sought pursuant to 42 U.S.C. §§ 2000e-5, 1981a, and 1988, and 28 U.S.C. §§ 2201, 2202, 1331(a) and 1343.

2.      Plaintiff has complied with all jurisdictional prerequisites, including those set forth in 42 U.S.C. § 2000e-5.

3.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) in that a substantial part of the events giving rise to Plaintiff's claims(s) for violation(s) of the aforementioned statute(s) occurred in the Eastern District of Pennsylvania, where all Defendant(s) herein reside and/or conduct business.

## Parties

4.      Plaintiff Kelly Neal is an adult individual and resident within the Eastern District of Pennsylvania, and/or citizen of the City of Philadelphia and/or the Commonwealth of Pennsylvania, and at any and all times relevant herein, was and is an adult female individual employed by Defendant City of Philadelphia, Philadelphia Police Department, as a police officer at the 26th District located at 615 E. Girard Avenue, Philadelphia, PA 19125.

5.      Defendant City of Philadelphia is a city of the first class in the Commonwealth of Pennsylvania, conducting business at any and all times relevant at Philadelphia Police Department, 7th and Arch Streets, Philadelphia, PA, and/or 1515 Arch Street, 14th Floor, Philadelphia, PA 19102, and at any and all times relevant employed the Plaintiff with the Philadelphia Police Department on the 2C squad.

6.      Defendant P/O Jose Dones is an adult individual and at any and all times relevant, was an agent, servant, workman, police officer and/or employee of Defendant City of Philadelphia, Philadelphia Police Department, regularly conducting business at the 26th District, 615 E. Girard Avenue, Philadelphia, PA 19125.

## Facts

### SEXUALLY HOSTILE WORK ENVIRONMENT
### AT THE 26th DISTRICT OF THE PHILADELPHIA POLICE DEPARTMENT

7.      Plaintiff hereby incorporates averments 1 through 6 as though fully set forth herein at length.

8.      On or about February 10, 2020, the Plaintiff was promoted to the Victim Assistance Desk (hereinafter VAD) at the 26th District of the Philadelphia Police Department, from her old position (as a patrol officer on the 2C squad at the 26th District), a position in which she had served for approximately sixteen (16) years.

9.      This aforementioned promotion to the new position on the VAD afforded the Plaintiff the improved benefits and/or improved working conditions of working daytime hours during the week, with neither the nighttime/graveyard shift assignments nor the weekend shift assignments which often characterized her former position on the 2C squad, during some and/or all of those prior sixteen (16) years of service.

10.      On or about March 30, 2020, during the Plaintiff's shift at the VAD, Defendant Jose Dones (hereinafter Defendant Dones) removed his pants, directly behind and beside the Plaintiff, and stood in the open office of the 26th District in his boxer shorts, instead of using the locker room or bathroom to do so.

11.      On this and other subsequent occasions, Defendant Dones similarly stripped in the open office of the 26th District, in front of the Plaintiff and other female officers,

whereupon some and/or all of whom made complaints about Defendant Dones' regular public disrobing, in this fashion, to Lieutenant Richardson and/or Captain William Fisher, the immediate supervisors of the 26th District.

12.     More specifically, on at least four (4) more occasions, Defendant Dones was caught on camera publicly disrobing and removing his clothes to stand in his underwear, in the open office of the 26th District, and in close proximity to the Plaintiff and/or other female officers, on May 15, 2020, May 18, 2020, May 26, 2020 and June 6, 2020 (hereinafter "disrobing videos"), all of which occurred **after** the Plaintiff and/or other additional female officers had already registered complaints to the immediate supervisor(s) at the 26th District, namely Lieutenant Richardson and/or Captain Fisher. True and correct screengrabs from the disrobing videos are attached hereto and incorporated herein as Exhibit A, and a full and complete copy of the videos shall be provided to the Court and opposing counsel, which demonstrate as follows:

**Video 1, of May 15, 2020:**

A.   At approximately 0:03 seconds into the video, Defendant Dones stands up from his desk, directly behind the Plaintiff, and removes his pants, exposing himself in his underwear:



B.   At approximately 0:08 seconds into the video, Defendant Dones fingers the crack in his buttocks to remove his wedged underwear therefrom:



C. At 0:18 seconds into the video, Defendant Dones thereupon pulls another pair of pants over his underwear, lifts his shirt above his waist to expose his back and stomach and adjusts and buttons his pants:



**Video 2, of May 18, 2020:**

A. At 0:12 seconds into the video, Defendant Dones once again stands in his underwear at his desk, in the middle of the open office of the 26th District, and remains standing exposing himself in his underwear for approximately four (4) seconds, even though it's apparent from the circumstances of the video that Defendant Dones had been exposing himself for longer than what the Plaintiff was able to record on camera:



B. At 0:20 seconds into the video, Defendant Dones pulls a pair of pants or shorts over his underwear and adjusts the same, while casually answering a phone call on a cell phone:



**Video 3, of May 26, 2020:**

A.  At 0:34 seconds into the video, Defendant Dones has stood up from his desk and removes his pants, exposing himself in his underwear to Plaintiff and his co-workers at the 26th District, and at 0:42 seconds places his pants on his chair (where the blue stripe thereon is clearly visible at 0:51 in the video) whereupon Defendant Dones then adjusts his shirt and exposes his midsection:









**Video 4: June 9, 2020**

A.  This video begins with Defendant Dones, already having stripped down into his underwear, while standing up at his desk in the open office of the 26th District, directly beside the Plaintiff. At 0:09 seconds into the video, Defendant Dones pulls a pair of pants over his underwear, again with the telltale blue stripe, and at 0:13 seconds, an unidentified officer appears on the video, whereupon he too is exposed to Defendant Dones' behavior while attempting to open the office refrigerator to place items inside:





B.  At 0:19 seconds into the video, Defendant Dones is still standing beside his desk, exposing himself in his underwear, whereupon he pulls his pants over

his boxer shorts in front of this unidentified officer, who then closes the refrigerator and appears to exchange words with Defendant Dones, whereupon the video ends.

13.     As set forth in the disrobing video screengrabs in <u>Exhibit A</u>, Defendant Dones regularly removes his pants and exposes himself in his underwear, on multiple occasions, while parading himself and his physical presence in close proximity to the Plaintiff and/or other officers, female or otherwise, wearing nothing but a t-shirt and his underwear, in the open office of the 26th District, instead of utilizing the locker room(s) or bathroom(s) that are otherwise available for the same.

14.     Although <u>Exhibit A</u> clearly portrays Defendant Dones *in flagrante delicto*, successfully parading this sexually aggressive display of himself, in his underwear and in the open office environment of the 26th District, and for at least twenty-two (22) seconds on May 15, 2020, at least thirty-seven (37) seconds on May 18, 2020, at least sixty-five (65) seconds on May 26, 2020 and at least twenty-eight (28)  seconds on June 9, 2020 (as set forth in <u>Exhibit A</u> and in the videos thereof in the possession of undersigned counsel), upon information and belief the aggregate amount of time Defendant Dones has exposed himself, in this fashion and over multiple similar incidents, constitutes in excess of dozens of hours and hours of this documented practice of sexually intimidating self-exposure.

15.     Upon information, belief, and the Plaintiff's own direct experience and/or that of other police officers, while exercising this sordid parade of sexually intimidating *déshabillé*, Defendant Dones refuses to allow the Plaintiff (and/or other female officers) to speak to other officers and/or co-workers in his presence, which concretely interrupts the Plaintiff's ability and/or the ability of other officers, female or otherwise, to exercise their job duties as police officers.

16.     Upon information, belief, and the Plaintiff's own direct experience and/or that of other police officers, Defendant Dones' sexually discriminating and/or hostile self-exposure and aggressive treatment of and/or behavior around Plaintiff and other female officers, as aforementioned *supra*, has been allowed to perpetuate and fester because of his friendships with two superiors on the police force, namely two (2) Chief Inspectors named Michael Cram and Michael McCarrick.

17.     As a regular pattern, policy, and practice, all of the complaints regarding the aforementioned behavior of Defendant Dones, registered by the Plaintiff and/or other officers, have ignored by Plaintiff's supervisors, as aforementioned *supra*, and/or Defendant City.

## THE COVID-19 PANDEMIC, AND THE 2020 PRESIDENTIAL ELECTION

18.     In November of 2020, the 26th District was exceptionally busy because of *inter alia* the 2020 Presidential Election, and the Plaintiff was regularly working twelve (12)

hour shifts to deal with pressing matters and/or emergencies such as *inter alia* civil unrest surrounding the election and its results.

19.     Upon information and belief, and in or around November 2020, and/or in response to the Covid-19 pandemic and the civil unrest surrounding the 2020 Presidential Election, a memorandum from the Plaintiff's supervisor, Captain Fisher (hereinafter the "Fisher Memo") was circulated throughout the 26th District, mandating that if any police officer called out sick, they would face the retaliatory consequence of assignment to the "last out" shift, which is the graveyard shift commencing at 11:00 pm and ending at 7:00 am, one well-known to police officers as being the least desirable shift to work, and the shift from which the Plaintiff had been promoted to the VAD desk, as aforementioned *supra.*

20.     On or about November 4, 2020, the Plaintiff reported to her supervisor, Lieutenant Richardson, that she was feeling ill due to symptoms of Covid-19, and thereby posed a threat to her fellow police officers.

21.     However, because of the Fisher Memo, the Plaintiff was nonetheless expected by Captain Fisher and/or Lt. Richardson to appear for working her shift *despite* the Covid infection (due to the consequential retaliation she would otherwise face, as set forth in the Fisher Memo) and was therefore not provided with any sick leave, for her own health or the safety of the other officers with whom she worked.

22.     On or about November 8, 2020, four (4) days after her revelation to Lieutenant Richardson that she may be highly contagious with Covid-19 and a severe danger to her fellow officers, the Plaintiff was forced to ride in a patrol car with another police officer, Omar Ramos, by virtue of the Fisher Memo and/or the deliberate indifference of her supervisors, as aforementioned.

23.     Because the Plaintiff did not want to expose Officer Ramos or his family to the severe and/or deadly repercussions of a Covid-19 viral infection, however, the Plaintiff informed Omar Ramos that she had recently been developing Covid-19 symptoms and was frightened by the possibility of subjecting Officer Ramos, and/or his family thereby, to the virus.

24.     Despite the threat of the Fisher Memo and the deliberate indifference of her supervisors, as aforementioned, when faced with the severe fright of infecting Officer Ramos and/or his family, the Plaintiff instead called out sick from work on or about November 9, 2020, so she could get tested for Covid-19, whereupon she scheduled a telecom visit at Abington Internal Medicine, and subsequently presented to the emergency room, where the Plaintiff was diagnosed with a 103-degree fever, pneumonia, and a positive Covid-19 viral infection.

25.     Plaintiff then telephoned Lieutenant Richardson to inform her of *inter alia* Plaintiff's diagnoses of pneumonia and a Covid-19 infection and left a message in that regard, whereupon Doreen Napper, the administrator for Captain Fisher of the 26th

District, returned the Plaintiff's call, and Ms. Napper warned the Plaintiff not to come into the precinct.

26.     Following these aforementioned diagnoses, the Plaintiff was out of work from on or about November 9, 2020 until on or about December 11, 2020, when the Plaintiff finally returned to her shift at the VAD desk.

27.     However, upon her return on or about December 11, 2020, the Plaintiff was promptly informed by Lieutenant Richardson and Captain Fisher, via yet another memorandum, that she was being demoted from her position on the VAD and was to return to work on the 2C squad, effective January 11, 2021 (hereinafter "Retaliation Memo"), a true and correct copy of which is attached hereto and incorporated herein as Exhibit B.

28.     Plaintiff then requested a meeting with her supervisor, Lt. Richardson, to discuss the reasoning for her demotion, but Plaintiff was not afforded the same.

29.     Instead, Captain Fisher spitefully informed the Plaintiff that because of Plaintiff's Covid-19 infection, Captain Fisher gave the entire back office five (5) days off, and blamed her for *inter alia* spreading the virus and/or scheduling inconveniences, despite the preexisting and retaliatory Fisher Memo and/or the Plaintiff's prompt reporting of her Covid-19 symptoms and/or her specific actions to avoid infecting Officer Ramos and/or other officers.

30.     As set forth at length *supra*, the actions and/or inactions of Defendant City and/or its employees and/or Plaintiff's supervisors are in violation of a host of Defendant's written policies, practices, or customs, including but not limited to the following Philadelphia Police Department Directives: 1 (Mission, Values, Ethics and Code of Conduct); 2 (Code of Ethics); 6.8 (Suggestion Program); 6.13 (Fitness and Wellness of Employees); 8.1 (Preventing Corruption Within Our Ranks); 8.4 (Reporting and Investigating Bias Incidents); 8.6 (Disciplinary Procedure); 8.7 (Equal Employment Complaint Procedures); 8.15 (Overtime Management); 11.3 (Sick Leave – Sworn and Civilian Personnel); 11.5 (Leave of Absence and Separation); 11.06 (Absent Without Permission); 11.07 (Reimbursable Overtime Permission); 11.10 (Overtime Pay and Compensatory Time); 12.3 (Performance Reports); 12.4 (Personnel Transfer Process); 12.8 (Vehicle or Pedestrian Investigations); 12.14 (Injuries on Duty & Other Service Connected Disabilities); 12.16 (District Assignment Sheet); and 12.18 (Complaints against the Philadelphia Police Department), and Plaintiff reserves to supplement this list should further discovery of additional policies arise.

31.     As set forth at length *supra*, the actions and/or inactions of the Defendants and/or its employees and/or agents, as aforementioned, interfered with the Plaintiff's ability to perform her job at the VAD desk, when the Plaintiff was otherwise entitled to reasonable accommodations from the Defendant to recover from her Covid-19 and pneumonia diagnoses, in violation of the aforementioned policies.

32.     Plaintiff timely submitted a complaint to the Equal Employment Opportunity
Commission on January 25, 2021, which issued its Right to Sue letter on or about March
16, 2022, a true and correct copy of which is attached hereto and incorporated herein as
Exhibit C.[1]

33.     Upon information, belief, and as thoroughly set forth at length *supra*, the actions
and/or inactions of Defendant City of Philadelphia and its police department, Defendant
Dones, and/or Plaintiff's supervisors, Lt. Richardson and/or Captain Fisher, constituted
and perpetuated a well settled and ingrained practice and culture of sexual harassment,
discrimination and/or retaliation pervading its police department in general, and/or the
26th District in particular.

34.     Upon information and belief, Plaintiff's complaints about Officer Dones and his
sexually hostile behavior in the open office of the 26th District as aforementioned, were a
factor in the decision to demote her from her position at the VAD desk, as further set
forth *supra* at length.

### COUNT I – SEX DISCRIMINATION
### PLAINTIFF v. DEFENDANTS
### VIOLATION OF TITLE VII OF
### THE CIVIL RIGHTS ACT OF 1964 – 42 U.S.C. § 2000e-2 et. seq.

35.     Averments 1 through 34, *supra*, are hereby incorporated as though fully set forth
herein at length.

36.     The Defendants have fostered, at any and all times relevant, a well settled and
ingrained, severe, and/or pervasive practice and culture of sexual harassment,
discrimination and/or retaliation pervading its police department, which was and is a
substantial reason for the harassment and retaliation that the Plaintiff has suffered
heretofore, as aforementioned, *supra,* in averments 1 through 34.

37.     As a female employee, Plaintiff belongs to a protected class upon which it is
illegal for Defendants to discriminate with regard to her compensation, terms, conditions,
or privileges of employment.

38.     The Defendants have engaged in unlawful practices in violation of Title VII of the
Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), by discriminating against the
Plaintiff on the basis of gender in their employment practices, including but not limited to
altering the terms, conditions, and/or privileges of the Plaintiff's employment on the basis
of her sex.

---

[1] As set forth therein, Plaintiff clearly instructed that it was to be simultaneously filed with the E.E.O.C.
*See* Evans v. Gordon Food Services, 2015 WL 4566817 at *3 (M.D. Pa. July 29, 2015) (A claimant will
generally satisfy the requirements of both agencies where he or she files a charge of discrimination with
one agency and instructs that agency to dual file with the other.)

39.     The Defendants have engaged in unlawful practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(d), by discriminating against the Plaintiff on the basis of her sex, where the Defendants control, train or retrain their employees with *inter alia* on-the-job training programs.

40.     The Plaintiff's protected characteristic of sex played a determinative factor in some and/or all of the Defendants' actions and/or inactions, as aforementioned.

41.     The Defendants subjected the Plaintiff to adverse tangible employment actions – such as significant changes in Plaintiff's employment status, discipline, denial of training, failure to promote, reassignment with significantly different job responsibilities, and/or decisions causing changes in terms, conditions, benefits and/or privileges of the Plaintiff's employment benefits, including but not limited to forcing Plaintiff to be exposed to Officer Dones' perversions, refusing to ameliorate her complaints regarding the same, and/or forcing her to intentionally expose other PPD officers to the Covid-19 virus.

42.     The Defendants were also in violation of Title VII because they were negligent in failing to rectify the pervasive, sexually intimidating, hostile and/or offensive work environment at the 26th District of the Philadelphia Police Department, examples of which have been detailed as aforementioned concerning *inter alia* Officer Dones.  *See* Exhibit A.

43.     Indeed, not only did the Defendants fail to rectify the sexually intimidating, hostile and/or offensive work environment at the 26th District, they actually fostered and encouraged the same by allowing Defendant Dones, Lieutenant Richardson, and Captain William Fisher to dismiss the Plaintiff's and other female employee's complaints in that regard as aforementioned, thereby fostering and encouraging a severe, pervasive, malignant, sexually intimidating, hostile and/or offensive work environment.

44.     Plaintiff's attempts at rectifying the same were similarly and summarily dismissed, further fostering and encouraging a severe, pervasive, malignant sexually intimidating, hostile and/or offensive work environment.

45.     Moreover, the Defendants fostered and encouraged a sexually hostile work environment through the aforementioned discriminatory culture at the 26th District, and in so doing violated the Philadelphia Police Department's own policies on Equal Employment Opportunity, and/or Harassment, copies of which had been previously provided to the Plaintiff and/or Defendant Dones.  See Police Directives, attached hereto and incorporated herein as Exhibit D.

46.     The Defendants cannot demonstrate any legitimate nondiscriminatory reasons for their employment actions and/or inactions against the Plaintiff, and any reasons proffered by any Defendant for their actions and/or inactions, individually and/or collectively, are pretextual and can readily be disbelieved.

47.     Alternatively, Plaintiff's protected status played a motivating part in the Defendants' decisions, actions and/or inactions, even if other factors may have also motivated their actions against Plaintiff.

48.     The Defendants acted with the intent to discriminate, as detailed *supra*.

49.     The Defendants were insistent and/or deliberately indifferent to a continuing, egregious course of conduct, as detailed *supra*.

50.     As a result of the Defendants' violations of Title VII, the Plaintiff has suffered damages including but not limited to past and/or future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm both tangible and intangible.

        WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against the Defendants, in an amount in excess of $150,000 (One Hundred Fifty Thousand Dollars), as follows:

        (a) Declaratory judgment in the nature of an order declaring that the actions of the Defendants violate Title VII of the Civil Rights Act of 1964;

        (b) Injunctive relief, enjoining the Defendants from further such violations;

        (c) Compensatory and punitive damages in an amount to be determined at trial, together with interest, costs and fees, including expert witness fees pursuant to 42 USC § 1988;

        (d) Attorney's fees; and

        (e) Such other relief as this Honorable Court deems appropriate.

### COUNT II – HOSTILE WORK ENVIRONMENT
### PLAINTIFF v. DEFENDANTS
### VIOLATION OF TITLE VII OF
### THE CIVIL RIGHTS ACT OF 1964 – 42 U.S.C. § 2000e-2 et. seq.

51.     Plaintiffs hereby incorporate averments 1 through 50 as though fully set forth herein at length.

52.     Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the Plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the Plaintiff's employment. *See* Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).

53.     Respondeat superior liability exists for an employer regarding the acts of non-supervisory employees where, as here, the employer "knew or should have known of the harassment and failed to take prompt remedial action." *See* <u>Andrews v. City of Philadelphia</u>, 895 F. 2d 1469, 1486 (3d Cir. 1990).

54.     Employer liability for co-worker harassment also exists where, as here, "the employer failed to provide a reasonable avenue for complaint." *See* <u>Huston v. Procter & Gamble Paper Prods. Corp.</u>, 568 F.3d 100, 105 (3d Cir. 2009).

55.     In sexual harassment cases, examples of conduct warranting a finding of a hostile work environment include but are not limited to:  verbal abuse of a sexual nature; graphic verbal commentaries about an individual's body, sexual prowess, or sexual deficiencies; sexually degrading or vulgar words to describe an individual; pinching, groping and fondling; suggestive, insulting or obscene comments or gestures; the display in the workplace of sexually suggestive objects, pictures, posters or cartoons; asking questions about sexual conduct; and unwelcome sexual advances.  *See* <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21 (1993) ("discriminatory intimidation, ridicule, and insult"); <u>Meritor Savings Bank FSB v. Vinson</u>, 477 Y.S. 57, 60-61 (1986) (repeated demands for sexual favors, fondling, following plaintiff into women's restroom, and supervisor's exposing himself); <u>Mandel v. M & O Packaging Corp.</u>, 706 F. 3d 157, 168 (3d Cir. 2013) (stressing that inquiry "must consider the totality of the circumstances" rather than viewing component parts separately).

56.     Additionally, the Third Circuit recognizes a hybrid cause of action for hostile work environment based on retaliation, holding that the retaliation provision of Title VII "can be offended by harassment that is severe or pervasive enough to create a hostile work environment." <u>Jensen v. Potter</u>, 435 F. 3d 444, 446 (3d Cir. 2006).

57.     Here, the Defendants' conduct occurred because of Plaintiff's legally protected characteristic and was severe or pervasive enough to make a reasonable person of the same legally protected class believe that the conditions of employment were altered and that the working environment at the 26th District was intimidating, hostile and/or abusive.

58.     The sexually harassing conduct by Defendant Dones, as aforementioned, and as facilitated by Plaintiff's supervisors, as aforementioned, directly refers to Plaintiff's sex and the retaliatory harassing conduct refers directly to Plaintiff's protected status and/or activity.

59.     The Defendants delegated to Plaintiff's supervisors and/or co-employees the authority to control the work environment, and they abused that authority to create a hostile work environment.

60.     Sexually explicit, verbally and physically harassing conduct filled the environment of the Plaintiff's office and/or work environment, at the 26th District's premises. *See* <u>Exhibit A</u>.

61.     The Defendants knew that the sexually explicit, verbally and physically harassing conduct filled the Plaintiff's office and/or work environment, at the 26th District's premises.  *See* Exhibit A.

62.     Sexually explicit, verbally and physically harassing conduct caused the Plaintiff to sustain severe emotional distress resulting in serious psychological ramifications.

63.     Plaintiff subjectively regarded the sexually explicit, verbally and physically harassing conduct as unwelcome and unwanted and objectively opposed the conduct.

64.     Additionally, the Defendants are liable for a retaliatory hostile work environment because the Defendants subjected the Plaintiff to a persistent series of grievances including but not limited to repeated acts of intimidation and continued changes to Plaintiff's working conditions.

65.     The Defendants' conduct was both severe and pervasive, as aforementioned in averments 1 through 34.

66.     The Defendants' conduct was physically threatening and humiliating, as aforementioned in averments 1 through 34.

67.     The conduct unreasonably interfered with Plaintiff's work performance.

68.     The Defendants' conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

69.     The Defendants provided a futile avenue for complaint for the Plaintiff.

70.     The Defendants retaliated against the Plaintiff for her complaints, namely by allowing Defendant Dones' behavior to continue and/or demoting her from the VAD desk, as further set forth at length *supra* and *infra*.

71.     The Defendants acted upon a continuing course of conduct, as aforementioned.

72.     The Defendants have been previously sued for, and/or have been presented with claims of, similar sexual harassment, retaliation and/or hostile work environment claims, and have failed to change the culture of the police department to prevent this from happening to employees like the Plaintiff.

73.     As a result of the Defendants' violations of Title VII, the Plaintiff has suffered damages including but not limited to past and/or future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm both tangible and intangible.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against the Defendants, in an amount in excess of $150,000 (One Hundred Fifty Thousand Dollars), as follows:

(a) Declaratory judgment in the nature of an order declaring that the actions of the Defendant violate Title VII of the Civil Rights Act of 1964;

(b) Injunctive relief, enjoining the Defendants from further such violations;

(c) Compensatory and punitive damages in an amount to be determined at trial, together with interest, costs and fees, including expert witness fees pursuant to 42 USC § 1988;

(d) Attorney's fees; and

(e) Such other relief as this Honorable Court deems appropriate.

### COUNT III – RETALIATION
### PLAINTIFF v. DEFENDANT CITY
### VIOLATION OF TITLE VII OF
### THE CIVIL RIGHTS ACT OF 1964 – 42 U.S.C. § 2000e-3 et. seq.

74.    Plaintiff hereby incorporates averments 1 through 73 as though fully set forth herein at length.

75.    Title VII protects employees from retaliation for attempting to exercise their rights under the Act, outlawing "(d)iscrimination for making charges, testifying, assisting, or participating in enforcement proceedings.  It shall be an unlawful employment practice for an employer to discriminate against any of his employees…because (she) has opposed any practice made an unlawful employment practice by this subchapter, or because (she) has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  *See* 42 U.S.C. § 2000e-3.

76.    A cause of action for retaliation under Title VII lies whenever the employer responds to protected activity in such a way that "might have dissuade a reasonable worker from making or supporting a charge of discrimination."  *See* Burlington v. N. & S.F. Ry. V. White, 548 U.S. 53, 68 (2006).

77.    Informal complaints and protests can constitute protected activity under the "opposition" clause of 42 U.S.C. § 2000e-3.  *See* Moore v. City of Philadelphia, 461 F. 3d 331, 343 (3d Cir. 2006)  ("Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management.").

78.     Retaliation need not be job-related to be actionable under Title VII; for example, an employer can effectively retaliate against an employee by taking actions not directly related to her employment or by causing her harm outside the workplace.  *See* Burlington v. N. & S.F. Ry. V. White, 548 U.S. 53, 61-62 (2006) (rejecting authority from the Third Circuit and others requiring that plaintiff suffer an adverse employment action in order to recover for retaliation).

79.     Title VII not only bars retaliation against the employee who engaged in the protected activity; it also bars retaliation against another employee if the circumstances are such that the retaliation against that employee might well dissuade a reasonable worker from engaging in protected activity.  *See* Thompson v. North American Stainless, L.P., 131 S. Ct. 863, 868 (2011).

80.     Defendant City discriminated against the Plaintiff because of her protected activity under Title VII.

81.     The Plaintiff was acting under a reasonable, good faith belief that her right to be free from discrimination, on the basis of sex and/or disability due to pneumonia and/or Covid viral infection, was violated.

82.     The Plaintiff was subjected to materially adverse actions at the time or after the protected conduct took place.

83.     In addition, Defendant City discriminated against the Plaintiff by taking materially adverse actions because she required about a month of sick time due to her Covid-19 and pneumonia diagnoses and/or because of her complaints concerning Officer Dones' perverted parades of himself in his underwear.

84.     There was a causal connection between the Defendants' materially adverse actions and Plaintiff's protected activity.

85.     Defendant City acted upon a continuing course of conduct, as detailed *supra*, routinely ignoring Plaintiff's complaints about Officer Dones and/or her warnings regarding her Covid infection.

86.     The Plaintiff will rely upon a broad array of evidence to demonstrate a causal link between her protected activity and the Defendants' actions and/or inactions taken against her, such as the unusually suggestive proximity in time between events, as well as Defendants' antagonism and/or deliberate indifference toward the Plaintiff after Defendant City became aware of the Plaintiff's protected activity.

87.     Plaintiff engaged in protected activity by taking about a month of sick days immediately following her diagnoses of Covid-19 and pneumonia.

88.     Defendant City demoted Plaintiff because of this protected activity and/or interfered with her ability to advance in her position.

89.     As a result of Defendants' conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to financial loss, reputational damage, humiliation and psychological harm.

90.     Upon information and belief, Defendants' conduct was intentional, deliberate, willful, malicious, and reckless, and was conducted with an evil motive and in callous disregard of the Plaintiff's rights, entitling the Plaintiff to punitive damages.

91.     Plaintiff is entitled to all remedies available for violations of Title VII.

92.     As a result of the Defendants' violations of Title VII, the Plaintiff has suffered damages including but not limited to past and/or future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm both tangible and intangible.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant City, in an amount in excess of $150,000 (One Hundred Fifty Thousand Dollars), as follows:

(a) Declaratory judgment in the nature of an order declaring that the actions of the Defendant violate Title VII of the Civil Rights Act of 1964;

(b) Injunctive relief, enjoining Defendant City from further such violations;

(c) Compensatory and punitive damages in an amount to be determined at trial, together with interest, costs and fees, including expert witness fees pursuant to 42 USC § 1988;

(d) Attorney's fees; and

(e) Such other relief as this Honorable Court deems appropriate.

## COUNT IV - FAMILY AND MEDICAL LEAVE ACT
### PLAINTIFF v. DEFENDANT CITY
### 29 U.S.C. § 2601 et. seq.

93.     Averments 1 through 92 are hereby incorporated as though fully set forth herein at length.

94.     Pursuant to 29 U.S.C. § 2612(a)(1)(D), Plaintiff's aforementioned pneumonia and Covid infections were serious health condition(s) that made the Plaintiff unable to perform the functions of a Philadelphia Police Officer, and she was therefore entitled to paid leave from her employment as a police officer for up to twelve (12) weeks.

95.     Pursuant to 29 U.S.C. § 2614(a), upon her return from leave for her serious health condition(s) as aforementioned, the Plaintiff was guaranteed to be restored to the position of employment she held at the VAD desk when her leave commenced, or to be restored to an equivalent position with equivalent benefits, pay, and/or the other terms and conditions of her employment, and none of the benefits of her employment at the VAD desk were to be reduced, deducted, or in any way abbreviated or lost.

96.     The Fisher Memo and/or Retaliation Memo and/or the Plaintiff's demotion from the VAD desk, as aforementioned, are in violation of 29 U.S.C. § 2615(a)(1), in so far as they constituted egregious attempts on the part of Defendant City to interfere with, restrain, or deny the exercise of or the attempt to exercise, Plaintiff's rights under Title 29.

97.     In violation of 29 U.S.C. § 2615(a)(2) and upon Plaintiff's return to work on or about December 11, 2020, it was unlawful for Defendant City (via Lt. Richardson and Captain Fisher) to then discharge her from the VAD desk and/or accuse her of spreading the virus amongst her co-workers, and/or otherwise discriminate against the Plaintiff for calling out sick because of her pneumonia and/or Covid viral infections, and for refusing to expose her fellow officers to the pneumonia and/or Covid viruses. *See* Exhibit B.

98.     In violation of 29 U.S.C. § 2615(a)(2), upon Plaintiff's return to work on or about December 11, 2020, it was unlawful for Defendant City (via Lt. Richardson and Captain Fisher) to then demote the Plaintiff from her shift at the VAD desk to the 2C squad, effective January 11, 2021. *See also* Exhibit B.

99.     Pursuant to 29 U.S.C. § 2617, the aforementioned violations of Title 29 by Defendant City herein, empowers the Plaintiff with this instant cause of action against Defendant City.

        WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant City, in an amount in excess of $150,000 (One Hundred Fifty Thousand Dollars), as follows:

        (a) Declaratory judgment in the nature of an order declaring that the actions of the Defendant violate Title 29;

        (b) Injunctive relief, enjoining Defendant City from further such violations;

        (c) Compensatory and punitive damages in an amount to be determined at trial, together with interest, costs and fees, including expert witness fees pursuant to 29 U.S.C. § 2617;

        (d) Attorney's fees; and

        (e) Such other relief as this Honorable Court deems appropriate.

## COUNT V
## PLAINTIFF v. DEFENDANTS
## VIOLATION OF THE PENNSYLVANIA
## HUMAN RELATIONS ACT– 43 P.S. § 955 et seq.

100.    Plaintiff hereby incorporates averments 1 through 99 as though fully set forth herein at length.

101.    As a female employee, Plaintiff belongs to a protected class upon whom it is illegal for the Defendants to discriminate with regard to her compensation, terms, conditions, or privileges of employment.

102.    As aforementioned in detail above, the Plaintiff suffered an adverse consequence to her employment as a direct result of her gender and/or disability from the pneumonia and/or Covid 19 infections.

103.    This inequity in the terms and conditions of her employment is just one of several factors that clearly indicate the discriminatory nature in which the Defendants treated Plaintiff because of her gender and/or disability, as is more fully set forth above.

104.    Even after the disparity was brought to the Defendants' attention, no attempt was made by anyone with decision-making power within the organization to improve the terms and conditions of Plaintiff's employment to a level equal to that of male counterparts at the 26th District, or equal to that before Plaintiff notified her superiors of her pneumonia and/or Covid viral infections.

105.    The Defendants have engaged in unlawful practices in violation of the Pennsylvania Human Relations Act, 43 P.S. § 955, by discriminating on the basis of gender and/or disability in their employment practices, including but not limited to altering the terms and conditions of the Plaintiff's employment on the basis of her sex and/or because she had to take a month's worth of sick leave.

        WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against the Defendants, in an amount in excess of $150,000 (One Hundred Fifty Thousand Dollars), as follows:

        (a) Declaratory judgment in the nature of an order declaring that the actions of the Defendants violate the Pennsylvania Human Relations Act;

        (b) Injunctive relief, enjoining the Defendants from further such violations;

        (c) Compensatory and punitive damages in an amount to be determined at trial, together with interest, costs and fees, including expert witness fees pursuant thereto;

(d) Attorney's fees; and

(e) Such other relief as this Honorable Court deems appropriate.

## COUNT VI
### PLAINTIFF v. DEFENDANT CITY
### PENNSYLVANIA WHISTLEBLOWER RETALIATION
### 43 P.S. § 1422 et. seq.

106.    Plaintiff hereby incorporates averments 1 through 105 as though fully set forth herein at length.

107.    Among other things, the Whistleblower Law defines an employer as "any of the following which receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body:...(3) An association...(4) A corporation for profit." *See* 43 P.S. § 1422.

108.    Upon information and belief, the Defendant is and/or has received money from and/or actively represented a public body in the provision of the Defendant's general services, receiving money from Defendant City itself and/or the Commonwealth of Pennsylvania and/or federal government.

109.    The Whistleblower Law provides that "No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrong doing or waste by a public body or an instance of waste by any other employer as defined in this act." *See* 43 P.S. § 1423.

110.    "Wrongdoing includes not only violations of statutes or regulations that are of the type that the employer is charged to enforce, but violations of any federal or state statute or regulation." *See* Golaschevsky v. Dep't of Envtl. Protection, 554 Pa. 157, 162 (1998), *citing* 43 P.S. § 1422.

111.    Plaintiff has extensively alleged the Defendant's violations of federal and state law herein, both *supra* and *infra*.

112.    In order to plead a retaliation case under the Whistleblower Law, a plaintiff must plead (1) wrongdoing and (2) a causal connection between the report of wrongdoing and adverse employment action. McAndrew v. Bucks County Bd. Of Com'rs, 982 F.Supp.2d 491, 503 (E.D.Pa. 2013).

113.    Plaintiff has extensively alleged wrongdoing, in violation of federal and/or state law, and a causal connection of that wrongdoing with the termination of her employment, *supra* and *infra*.

21

114.    In analyzing whether the motive for an adverse employment action is retaliatory, courts in the Third Circuit have two factors: "(1) the temporal proximity between the protected activity and the alleged discrimination and (2) the existence of a pattern of antagonism in the intervening period." Hussein v. UPMC Mercy Hosp., 466 Fed. Appx. 108, 112 (3d Cir. 2012).

115.    Plaintiff has extensively pled the temporal proximity between her protected activity and the discrimination surrounding the same, and the existence of a pattern of antagonism toward the Plaintiff, *supra*.

116.    As a result of the Defendant's violations of the Whistleblower Law, the Plaintiff has suffered damages including but not limited to past and/or future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm both tangible and intangible.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against the Defendant, in an amount in excess of $150,000 (One Hundred Fifty Thousand Dollars), representing actual damages, compensatory damages, reasonable attorneys' fees, litigation costs, pre and post judgment interest, and adjudication and declaration that the Defendant's conduct as set forth herein is in violation of the Whistleblower Law; lost wages, and all additional general and equitable relief to which the Plaintiff is entitled.

## COUNT VII
## PLAINTIFF v. DEFENDANTS
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

117.    Plaintiff hereby incorporates averments 1 through 116 as though fully set forth herein at length.

118.    Plaintiff brings claims against the Defendants for IIED and to hold the Defendants vicariously liable for their actions and/or inactions, as further set forth at length *supra*, including those of Lt. Richardson and/or Captain Fisher.

119.    The Defendants' actions and/or inactions, as aforementioned, were extreme and/or outrageous.

120.    The Defendants' actions and/or inactions, as aforementioned, were intentional and/or reckless.

121.    The Defendants' actions and/or inactions, as aforementioned, caused the Plaintiff severe emotional distress.

122.    During Plaintiff's employment, the Defendants intentionally and recklessly harassed and inflicted emotional injury on the Plaintiff by subjecting her to outrageous treatment beyond all bounds of decency.

123.    The Defendants verbally, mentally and/or physically abused the Plaintiff and treated her in a demeaning and inferior manner, which no reasonable person could be expected to endure.

124.    As a direct and proximate result of the Defendants' malicious and conscious wrongful actions and/or inactions, Plaintiff has sustained severe emotional distress resulting in bodily injury and/or damages supported by medical evidence.

125.    As a result of Defendants' actions and/or inactions, the Plaintiff has suffered damages including but not limited to past and/or future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm both tangible and intangible.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against the Defendant, in an amount in excess of $150,000 (One Hundred Fifty Thousand Dollars), representing actual damages, compensatory damages, reasonable attorneys' fees, litigation costs, pre and post judgment interest; lost wages, and all additional general and equitable relief to which the Plaintiff is entitled.

## COUNT VIII
## PLAINTIFF v. DEFENDANT DONES AND DEFENDANT CITY
## <u>CIVIL CONSPIRACY</u>

126.    Plaintiff hereby incorporates averments 1 through 125 as though fully set forth herein at length.

127.    Plaintiff believes and therefore avers that the Defendants, by and through their actions and/or inactions, as more fully set forth in the preceding paragraphs of this Complaint, did intentionally conspire with one another, while acting within the course and scope of their employment of and/or supervisor authority over Plaintiff, to unlawfully harass Plaintiff and/or deny her the rights to which she was entitled under federal law, which ultimately caused Plaintiff substantial damages and harm, as aforementioned.

128.    The Defendants' civil conspiracy for their malicious, intentional, and/or reckless actions and/or inactions was a factual cause of and/or directly and proximately caused Plaintiff's substantial damages and harm, as aforementioned.

129.    The above-described actions of the Defendants were so malicious, intentional, and reckless and displayed such a reckless indifference to the Plaintiff's rights and well-being that the imposition of punitive damages is warranted.

130.    The actions of the Defendants therefore constitute civil conspiracy under the laws of the Commonwealth of Pennsylvania, and this Court has supplemental jurisdiction to hear and adjudicate these claims.

WHEREFORE, Plaintiff demands judgment against the Defendant for such sums as would reasonably and properly compensate her for her injuries in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000), together with delay damages, interest, costs, attorney's fees, and punitive damages.

## DEMAND FOR JURY TRIAL

Trial by a jury of twelve (12) persons is demanded as to all issues.

Respectfully Submitted,

LAW OFFICE OF J. CONOR CORCORAN, P.C.

Date:   6/6/2022

J. Conor Corcoran, Esquire
Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **Kelly Neal** | : | |
| | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | **No.** |
| | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **City of Philadelphia** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## CERTIFICATE OF SERVICE

I, J. Conor Corcoran, Esquire, hereby certify that a true and correct copy of the Complaint in the above captioned matter has been sent to the following by first class, United States mail:

Defendant City of Philadelphia
1515 Arch Street, 7th Floor
Philadelphia, PA 19102

Defendant Jose Dones
615 E. Girard Avenue
Philadelphia, PA 19125

Respectfully Submitted,

LAW OFFICE OF J. CONOR
CORCORAN, P.C.

Date:   6/6/2022

J. Conor Corcoran, Esquire
Attorney for Plaintiff

25